IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

BERRY MORROW                                                                                           PLAINTIFF

v.                              NO. 5:14-cv-00321 KGB/HDY

KENDRICK NELSON, WILLIAM STRAUGHN,                                          DEFENDANTS
STEVE OUTLAW, LAKISHA LEE, MARVIN EVANS,
RAY HOBBS, and NICOLA KELLY

FINDINGS AND RECOMMENDATION

INSTRUCTIONS

The following findings and recommendation have been sent to United States District Judge Kristine G. Baker. Any party may serve and file written objections to these findings and recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the Office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendation. The copy will be furnished to the opposing party. Failure to file timely objections may result in a waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1. Why the record made before the Magistrate Judge is inadequate.

2. Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3. The details of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, Arkansas 72201-3325

RECOMMENDATION

INTRODUCTION. The defendants have filed the pending motion for summary judgment. See Pleading 23.[1] For the reasons that follow, the undersigned recommends that their motion be granted. This case should be dismissed, and judgment should be entered for the defendants. Any appeal by plaintiff Berry Morrow ("Morrow") should be deemed frivolous and not taken in good faith.

FACTS. The defendants have submitted a statement of the material facts they maintain are not in dispute. See Pleading 25. Their statements, and their pleadings and exhibits submitted by the parties, establish that the material facts are not in dispute. Those facts are as follows:

1. Morrow is a prisoner in the custody of the Arkansas Department of Correction ("ADC") who came to be housed in punitive segregation at the Maximum Security Unit in Tucker, Arkansas. See Pleading 25 at 1-2.

2. An inmate's time in punitive segregation was governed by ADC Administrative Directive ("AD") 12-24. See Pleading 25, Exhibit A at 18.

3. It set forth a number of restrictions, one of which governed an inmate's possession of personal property in punitive segregation; with respect to that matter, AD 12-24 provided, in relevant part, the following:

---

[1] Federal Rule of Civil Procedure 56(a) provides, in part, that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

> Inmates sentenced to punitive segregation are not allowed personal property; thereby, personal property will be inventoried in accordance with appropriate policy addressing inmate property control. While in punitive segregation, the inmate will be allowed to have the following items only, contingent upon good security:
>
> a. Legal materials/Religious text-only that amount of legal material which can be kept neat and orderly and does not clutter the cell, <u>plus one religious text (i.e., Bible, Koran, etc.</u>)
>
> …

See Pleading 25, Exhibit A at 20 (emphasis added).[2]

4. Because an inmate was sometimes required to serve "consecutive punitive isolation sentences" in punitive segregation, AD 12-24 required ADC officials to grant the inmate a forty-eight hour relief period. See Pleading 25, Exhibit A at 24.

5. During the forty-eight hour relief period, most of an inmate's privileges were restored. See Pleading 25, Exhibit A at 24.

6. It appears that Morrow was serving "consecutive punitive isolation sentences" as he was given a forty-eight hour relief period at some point during his stay in punitive segregation. See Pleading 25, Exhibit 2 at 14-16.

7. As he was coming off a forty-eight hour relief period and returning to punitive segregation, he was found with a copy of <u>Strong's Exhaustive Concordance</u>. See Pleading 25 at 1-2; Pleading 25, Exhibit A at 2; Pleading 25, Exhibit 2 at 16, 60-61.

---

[2] Identical terms were contained in ADC Policy Number MS 10.02.0, a policy that also governed an inmate's time in punitive segregation. See Pleading 25, Exhibit A at 29.

8. The concordance had been loaned to him by a prison chaplain for use as a "reference book." <u>See</u> Pleading 25, Exhibit 2 at 12, 31-33, 40, 44, 111.

9. Morrow's understanding and use of the phrase "reference book," though, was a bit involved; during a deposition, he testified to the following regarding his understanding and use of the concordance:

> A. You can use it [i.e., the concordance] for that [i.e., as a reference book]. It is a reference book. No, it's not. It's-it's-the religious works in the back of it, the Greek and the Hebrew, that is the Scriptures. You have to lay them out. It's-everybody else interprets it. Like King James, he used them words to come up with the King James Bible. That King James Bible is his interpretation of the words in the Greek and Hebrew. They-they have different meanings.
>
> So that-that's why there are so many different Bibles out there, is everybody gets a different understanding of the words. So you have to look back to the original Greek and Hebrew to understands what is really meant. And that's why I'm calling the Strong's my primary religious text, because it's the only access I have to the original Greek and Hebrew. I have no other access. So that is my primary religious text. That's not a reference book.
>
> Q. Okay, sir, so the way you use the Strong's Concordance is you look up things and it tells you where it is in the Holy Bible, then you go to the Holy Bible and read it?
>
> A. Yes, ma'am.
>
> Q. So basically, you're using two texts. Is that what you're saying?
>
> A. Yes, ma'am.
>
> Q. Okay. So your having the Strong's Concordance without having access to a Bible, that wouldn't work would it?
>
> A. It makes it extremely difficult, but you can do it still.

> Q. So are you trying to say that you want a Strong's Concordance but not a Bible?
>
> A. No. I really want both of them, because they're absolutely–they're–they're–they're not–it makes things so much earlier to have both of them. And that's–whenever you asked me about filing the lawsuit just on this book, it's about the policy about the–the one religious text is detrimental to the issue as well. Because I need this book and the Bible, but I always–I always took this book and studied the Bible because I can–I can still–because I've read the Bible so many times–

See Pleading 25, Exhibit 2 at 45-46.

10. The concordance was confiscated in accordance with AD 12-24, inventoried, and placed with Morrow's other personal property. See Pleading 25 at 1-2; Pleading 25, Exhibit A at 2; Pleading 25, Exhibit 2 at 30.

11. At some point, the concordance was returned to the chaplain. See Pleading 25, Exhibit 2 at 30, 73.

12. Morrow thereafter filed two grievances, identified as Grievance No. MX 14-00801 and Grievance No. MX 14-00884, challenging the confiscation of the concordance. See Pleading 25 at 5.

13. In the grievances, he maintained that ADC officials interfered with his right to practice his religion when they confiscated the concordance, a book he characterized in MX 14-00801 as his "primary religious text." See Pleading 25, Exhibit A at 4.

14. The grievances were rejected at every stage of the grievance process; the reason why was most clearly articulated by defendant William Straughn ("Straughn"), who stated the following in rejecting MX 14-00801:

> I have reviewed your grievance dated 04/15/2014. In your grievance, you state Captain Nelson confiscated your Strong's Exhaustive Concordance for no reason. You state this book is your primary religious text and was issued to you by the Chaplain. You state you have underwent dozens of inventories and no one else has had an issue with the book. You state without this book, you are not able to fulfill your religious duties of daily word study or assist others with finding sought after scriptures. You state you explained the situation to other staff and were told you should have [been] allowed to keep the book, but have yet to receive it.
>
> Books are not allowed while housed in Isolation. The Strong's Exhaustive Concordance is a religious text meant to [be a] supplement to the [B]ible. This type of book is classified to be personal property, which is not allowed while house in Isolation. The book will be returned to you when you leave Isolation. …

See Pleading 25, Exhibit A at 5.

15. Morrow was eventually released from punitive segregation and has not returned since. See Pleading 25. Exhibit 2 at 51.

PLEADINGS. Morrow commenced the case at bar by filing a complaint pursuant to 42 U.S.C. 1983. He joined the defendants, all of whom were ADC employees, in both their official and individual capacities. In the complaint, Morrow alleged that the defendants interfered with his right to practice his religion when they confiscated the concordance. He alleged that he was given two different reasons for why the concordance was confiscated, those being: it was not a religious text and, alternatively, it was a hardback book. He also maintained that the defendants refuse to return the concordance to him in retaliation for his grievances. He sought monetary damages and declaratory and injunctive relief, including a demand that the concordance be returned.

The defendants came to file the pending motion for summary judgment. See Pleading 23. In the motion, they asked that Morrow's complaint be dismissed because they are "entitled to sovereign immunity as to all claims for monetary damages in their official capacit[ies]," and because they are "entitled to qualified immunity as to all claims for monetary damages in their individual capacit[ies]." See Pleading 23 at 2. They additionally maintained that Morrow does not have "standing to pursue this lawsuit and any claim for injunctive relief is moot." See Pleading 23 at 2.

Morrow was accorded an opportunity to file a response to the defendants' motion for summary judgment, see Pleading 32, but he failed to take advantage of that opportunity. He did, though, file a motion for adequate supplies. See Pleadings 30. Notwithstanding his failure to file a response to the defendants' motion, the undersigned has liberally construed his pro se pleadings, and, as required, viewed the facts, and inferences to be drawn from those facts, in the light most favorable to him. See Matsushita Electric Industrial Company v. Zenith Radio Corp., 475 U.S. 574 (1986).

The undersigned has thoroughly reviewed the record in this case and finds that the defendants are entitled to judgment as a matter of law. They are shielded from liability for damages in their official capacities by sovereign immunity, and Morrow's claims for injunctive and prospective relief are moot or otherwise warrant no relief. The defendants are shielded from liability for damages in their individual capacities by qualified immunity, and his claims for injunctive and prospective relief are moot or otherwise warrant no relief.

OFFICIAL CAPACITY CLAIMS. Morrow seeks monetary damages from the defendants in their official capacities. A claim for damages against state actors joined in their official capacities is barred, "either by the Eleventh Amendment or because in these capacities they are not 'persons' for [42 U.S.C.] 1983 purposes." See Murphy v. State of Arkansas, 127 F.3d 750, 754 (8th Cir. 1997) [citing Will v. Michigan Department of State Police, 491 U.S. 58 (1989)]. His claim for damages against them in their official capacities is therefore barred, either by the Eleventh Amendment or because in those capacities they are not "persons" for purposes of 42 U.S.C. 1983.

Morrow also seeks declaratory and injunctive relief from the defendants in their official capacities. Unlike a claim for damages, claims for prospective relief against state actors joined in their official capacities are not barred. See Murphy v. State of Arkansas, supra (state officials acting in official capacities are "persons" for purposes of 42 U.S.C. 1983 and Eleventh Amendment is no bar to litigation). See also Klingler v. Director, Department of Revenue, 281 F.3d 776 (8th Cir. 2002). Declaratory and injunctive relief, though, is not warranted in this instance.

Morrow has been released from punitive segregation, and there is nothing to suggest that he will return to punitive segregation. He is therefore no longer subject to the conditions in punitive segregation, and, with one exception, his claims for declaratory and injunctive relief are moot. See Smith v. Hundley, 190 F.3d 852 (8th Cir. 1999) (because inmate was transferred to another institution, he was no longer subject to alleged unlawful practices).

The one exception involves Morrow's request that his concordance be returned. He maintains that his copy of Strong's Exhaustive Concordance was never returned after he left punitive segregation, and he asks that it now be returned.

The undisputed material facts establish that Morrow did not own the copy of Strong's Exhaustive Concordance he had in his possession, but it had been loaned to him by a prison chaplain. After the concordance was confiscated, it was returned to the chaplain. When Morrow was released from punitive segregation, he asked the chaplain for the concordance. See Pleading 25, Exhibit 2 at 81-82. The chaplain provided Morrow with a concordance, but it was not a Strong's Exhaustive Concordance. See Pleading 25, Exhibit 2 at 82. Instead, the chaplain provided Morrow with a copy of Young's Analytical Concordance. See Pleading 25, Exhibit 2 at 82. Morrow testified in his deposition that Young's Analytical Concordance is not an acceptable concordance. See Pleading 25, Exhibit 2 at 83. He testified that the only concordance he will accept is a Strong's Exhaustive Concordance. See Pleading 25, Exhibit 2 at 84.

The undersigned is not persuaded that Morrow has a constitutional right to the concordance of his choice; he has certainly not offered any authority for such a proposition. He has been provided with a concordance, and he has not shown why it is inadequate. He simply represents that it is unacceptable. Although Straughn represented that a Strong's Exhaustive Concordance would be given to Morrow once he left punitive segregation, the person responsible for providing that concordance to him is the chaplain, who is not a party to this case. No prospective relief is therefore warranted.

For the foregoing reasons, the undersigned finds that Morrow's claims against the defendants in their official capacities are either barred or warrant no relief. They are barred because of the Eleventh Amendment, since in their official capacities they are not "persons" for purposes of 42 U.S.C. 1983, or because his claims are moot. His claim that a copy of Strong's Exhaustive Concordance should be given to him in lieu of another concordance warrants no relief because he does not have a constitutional right to the concordance of his choice.

INDIVIDUAL CAPACITY CLAIMS. Morrow also seeks monetary damages and declaratory and injunctive relief from the defendants in their individual capacities. The defendants maintain that they are shielded from liability for damages in their individual capacities, and the undersigned agrees.

The law relevant to a defense of qualified immunity can be easily articulated, although its application can sometimes be problematic. "'In [42 U.S.C.] 1983 claims, qualified immunity shields government officials from liability and the burdens of litigation unless their conduct violated a clearly established constitutional or statutory right of which a reasonable official would have known.'" See Wagner v. Campbell, — F.3d —, 2015 WL 898083 at 4 (8th Cir. 2015) [quoting Carpenter v. Gage, 686 F.3d 644, 648 (8th Cir. 2012)].[3]

---

[3]

Stated differently, "[a]n official is entitled to summary judgment based on qualified immunity unless (1) the evidence, viewed in the light most favorable to the nonmoving party, establishes a violation of a federal constitutional or statutory right, and (2) the right was clearly established at the time of the violation." See Capps v. Olson, — F.3d —, 2015 WL 1134573 at 3 (8th Cir. 2015).

It is axiomatic that an inmate has a constitutional right to practice his religion while incarcerated. Prison officials may, however, impose reasonable restrictions upon that right. See Bell v. Wolfish, 441 U.S. 520 (1979). For the reasons that follow, there is no evidence that the defendants' conduct violated Morrow's right to practice his religion, and the restrictions they imposed were not unreasonable. The defendants are therefore shielded from liability for damages by qualified immunity.

Morrow maintains that the portion of AD 12-24 dealing with religious texts is unconstitutional. In Powell v. Perry, 1988 WL 93834 (E.D.Ark. 1988), United States Magistrate Judge John F. Forster found an identical provision of an ADC administrative regulation constitutional.[4] Given Judge Forster's finding, and applying the factors set forth in Turner v. Safley, 482 U.S. 78 (1987), the undersigned finds likewise with regard to the relevant portion of AD 12-24.[5] Morrow has not shown that the portion of AD 12-24 limiting the number of religious texts in punitive segregation unreasonably restricts his constitutional right to practice his religion.

---

[4] The administrative regulation at issue in Powell v. Perry was Administrative Regulation 839. It provided, in part, that punitive isolation prisoners could possess only one religious text.

[5] In Murchison v. Rogers, 2015 WL 1036004 at 2 (8th Cir. 2015), the Court of Appeals identified the factors as follows:

> There are four relevant factors in determining the reasonableness of [a prison] regulation: (1) whether there is "a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; (4) and whether there exist alternatives to accommodate the prisoner with a de minimis cost.

Morrow maintains that <u>Strong's Exhaustive Concordance</u> is his religious text, and he should have been permitted to have it in punitive segregation. In <u>Powell v. Perry</u>, Powell claimed that a book entitled <u>Initiation into Yoga</u> was his "religious text," and he should have been permitted to have it in a punitive isolation wing. Judge Forster found that the book was "not one the works accepted as a Hindu scripture and does not purport to be." <u>See</u> <u>Id</u>. 1998 WL 93834 at 2. He found that no constitutional violation occurred when the book was taken from Powell upon his transfer to punitive isolation.

The undersigned finds that <u>Strong's Exhaustive Concordance</u> is not a "religious text." Morrow professes to be a Nazirite and testified during his deposition that the controlling religious text of his religion is the "Holy Bible." <u>See</u> Pleading 25, Exhibit 2 at 41-42. He clarified that statement, though, by noting the following: "I use the Greek and the Hebrew of the old Torah and the New Testament that the Christians use." <u>See</u> Pleading 25, Exhibit 2 at 42. The book that is the subject of this litigation is not one of the works accepted as revealed scriptures. More importantly, the book does not purport to be revealed scriptures. Instead, it purports to be merely a concordance or aid in the study of the Bible.

Morrow testified in his deposition that "[a]ny religious book is a religious text," <u>see</u> Pleading 25, Exhibit 2 at 96, even going so far as to state that "even a Bible dictionary is a religious text," <u>see</u> Pleading 25, Exhibit 2 at 74. The undersigned need not address his assertion, save to again note that <u>Strong's Exhaustive Concordance</u> merely purports to be a concordance.

Morrow maintains that he was given two different reasons for why he was not allowed to have the concordance, i.e., it was not a religious text and, alternatively, it was a security concern. Save his testimony in the deposition, there is nothing to support his assertion that he was told the concordance was a security concern. Nevertheless, the undersigned accepts that he was told of that concern. The position taken by ADC officials throughout the grievance process and in this litigation, though, has been consistent: the concordance was confiscated because it was not a "religious text." It therefore matters little what he might have been told by some unidentified official.

Morrow's maintains that his copy of Strong's Exhaustive Concordance was never returned, and ADCdefendants have refused to provide him with the concordance. The undersigned is not convinced that he has a constitutional right to the concordance of his choice; he has certainly not offered any authority for such a proposition. He has been provided with a concordance, and he has not shown why it is inadequate. Although Straughn represented that a Strong's Exhaustive Concordance would be given to Morrow once he left punitive segregation, the person responsible for providing that concordance to him is the chaplain, who is not a party to this case.

Morrow also seeks declaratory and injunctive relief from the defendants in their individual capacities. He cannot obtain those types of relief as he has been released from punitive segregation, and there is nothing to suggest that he will return to punitive segregation. He is therefore no longer subject to the conditions in punitive segregation, and, with one exception, his claims for declaratory and injunctive relief are moot.

The one exception involves Morrow's request that his concordance be returned. As noted, though, the undersigned is not persuaded that Morrow has a constitutional right to the concordance of his choice; he has certainly not offered any authority for such a proposition. He has been provided with a concordance, and he has not shown why it is inadequate.

Given the undisputed material facts, it is clear that the defendants are entitled to judgment as a matter of law. Morrow's claims against them are barred, are moot, warrant no relief, or the defendants are shielded from liability by qualified immunity. The undersigned therefore recommends that their motion be granted. This case should be dismissed, and judgment should be entered for the defendants. Any appeal by Morrow should be deemed frivolous and not taken in good faith.

Morrow has also filed the pending motion for adequate supplies. See Pleadings 30. Construing his motion as one for injunctive relief, and applying the factors outlined in Dataphas Systems, Inc., v. C.L. Systems, Inc., 640 F.2d 109 (8th Cir. 1981), his motion should be denied. Although he failed to submit a response to the defendants' motion for summary judgment, his pleadings adequately framed the relevant issues and adequately developed the facts germane to the defendants' motion. Moreover, he was capable of, and in fact did, file a motion for appointment of counsel after filing his motion for adequate relief. Assuming, arguendo, that he did not have adequate supplies, there is no evidence the outcome of this case would have been different had he had more supplies.

DATED this ___27___ day of March, 2015.

_____
UNITED STATES MAGISTRATE JUDGE